UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA L. W.,[1] | |
| Petitioner, | Case No. 4:20-cv-00458-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

**INTRODUCTION**

Petitioner brought this matter for judicial review of Respondent's denial of his application for a period of disability and disability insurance benefits. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will affirm the decision of the Commissioner.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

## BACKGROUND

On June 14, 2018, Petitioner protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. He alleges a disability onset date of March 17, 2017. (AR 10.) Petitioner's application was denied upon initial review and on reconsideration. *Id.* A hearing was conducted by Administrative Law Judge (ALJ) Wynne O'Brien-Persons on May 5, 2020, at which the ALJ heard testimony from Petitioner and a vocational expert. *Id.*

On June 8, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from March 17, 2017, through the date of the written decision, and therefore determined Petitioner is not disabled. (AR 22.) Petitioner timely requested review by the Appeals Council, which denied his request on August 28, 2020. (AR 1 – 6.)

Petitioner timely appealed this final decision to the Court on September 29, 2020. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the alleged disability onset date of March 17, 2017, Petitioner was thirty years of age. (AR 21.) Petitioner is a high school graduate, and has past relevant work experience as a cashier, survey caller, customer service representative, school janitor, and fast food cook. (AR 21.)

At step two of the sequential process,[3] the ALJ found that Petitioner suffers from the following medically determinable severe impairments: bilateral hip osteoarthritis, status post bilateral surgery; morbid obesity; bipolar disorder; schizoaffective disorder; generalized anxiety disorder; post traumatic stress disorder; panic disorder; borderline personality disorder; and mild osteoarthritis of the mid and low back. (AR 12.) The ALJ did not find Petitioner's fibromyalgia constituted a medically determinable impairment at step two. (AR 13.)

At step three, the ALJ found that Petitioner does not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 13.) The ALJ next concluded Petitioner retained the residual functional capacity for light work, as defined in 20 C.F.R. § 404.1567(b), but imposed limitations as follows:

> [N]o ladders, ropes and scaffolds; occasional kneeling,
> crouching, crawling and stairs; all other postural at frequent;
> avoid moderate exposure to hazards; avoid concentrated
> exposure to vibrations, and cold; limited to simple routine
> tasks; occasional public coworker and supervisor interaction;
> the public and coworker interaction would be brief and
> superficial; limited to low stress work that is defined as
> occasional changes in the work setting and no fast paced

---

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).").

**MEMORANDUM DECISION AND ORDER - 3**

production work; and a sit-stand option that allows for a change in position every 30 minutes from sitting 30 minutes to standing 30 minutes.[4]

With such an RFC, the ALJ decided Petitioner did not retain the ability to perform his past relevant work, but that he retained the RFC to perform the requirements of representative occupations such as Office Work or Electronics Worker. (AR 20-22.)

## ISSUES FOR REVIEW

1.   Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony?

2.   Whether the ALJ reasonably evaluated the medical opinion evidence?

3.   Whether the ALJ's Residual Functional Capacity determination is supported by substantial evidence?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

---

[4] Light work requires the ability to lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and the ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10. Sedentary work, on the other hand, requires the ability to lift no more than 10 pounds at a time, with periods of standing or walking totaling no more than 2 hours of an 8-hour workday, and sitting for a total of approximately 6 hours of an 8-hour workday. SSR 83-10.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

Petitioner's assignments of error challenge the ALJ's step four findings regarding Petitioner's RFC, and the ALJ's step five conclusion that there are other jobs that exist in significant numbers in the United States that Petitioner can still perform. The Court does not find Petitioner's arguments regarding his RFC persuasive, as explained below.

## DISCUSSION

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC, (2) the physical and mental demands of the claimant's former employment, and (3) whether the claimant's RFC permits him to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an

administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of proof of establishing their RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

## 1.    Subjective Symptom Testimony

Petitioner argues the ALJ's findings concerning his subjective symptom testimony are not supported by substantial evidence in the record and are therefore erroneous. Specifically, Petitioner contends the medical records of Petitioner's treating orthopedist, Dr. Aoki, support Petitioner's testimony concerning his bilateral hip pain, and that the record does not support the mental health RFC limitations.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

duration of symptoms, the impact of the symptoms on daily living activities, factors that

precipitate and aggravate symptoms, medications and treatments used, and other methods

used to alleviate symptoms; (2) medical source opinions, statements, and medical reports

regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity,

persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

statements, considering how consistent those statements are with the claimant's

statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

Here, the ALJ considered Petitioner's subjective symptom testimony concerning

his physical and mental impairments, finding his testimony did not substantiate his

subjective allegations of disabling limitations. The ALJ concluded that, although

Petitioner's medically determinable impairments could reasonably be expected to cause

his alleged symptoms, his statements concerning the intensity, persistence, and limiting

effects of his symptoms were inconsistent with evidence in the record. (AR 16 – 17.)

The ALJ discussed the medical findings regarding Petitioner's hip impairments.

Petitioner underwent a left hip arthroscopy femoral acetabuloplasty on March 17, 2017,

and a right hip arthroscopy femoral acetabuloplasty and labral repair on April 28, 2017.

(AR 16.) The ALJ credited Petitioner's reports of bilateral hip pain, but in making her

finding that Petitioner's hip pain was not sufficiently severe to preclude all work, the ALJ

noted that the record reflected improvement in Petitioner's hip pain secondary to

significant weight loss; Petitioner reported to his provider that he was doing well and had

returned to working out at the gym; his hip flexion range of motion and strength

improved and were within normal limits after surgery; radiographs of his hips post surgery showed uncomplicated appearance; and Petitioner exhibited no motor or sensory deficits and a normal gait. (AR 16 – 17, 18.) The ALJ concluded that this evidence supported a finding that Petitioner could engage in full time work at the light exertional level, which requires the ability to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday, and she allowed for a sit-stand option permitting a change in position every thirty minutes. SSR 83-10.

Turning to Petitioner's mental impairments, the ALJ discussed Petitioner's two inpatient admissions for suicidal ideation, but noted that the record reflected Petitioner's mental health symptoms improved with medication; Petitioner was active in managing his medications and reported he "was better" when he took them as prescribed; and the record as a whole demonstrated Petitioner exhibited normal concentration and generally exhibited normal mood and affect when consistently taking his medication. (AR 17 - 18.)

Nonetheless, the ALJ recognized certain limitations resulting from Petitioner's mental health impairments, noting that when he failed to take his prescribed medications, his mood decreased significantly and resulted in increased aggression and road rage. (AR 17, 18.) The ALJ discussed also consultative examination findings, which objectively demonstrated below average immediate memory and below average ability to perform basic calculations. (AR 18.) The ALJ found that Petitioner's mental health impairments would require limitations to simple routine tasks; superficial interactions with coworkers, supervisors and the public; and low stress work.

Upon review of the record, the Court finds the ALJ's findings and conclusions are

supported by the record as a whole and that the ALJ provided both clear and convincing reasons for discounting Petitioner's subjective complaints concerning the limitations of his pain and mental impairments. The medical evidence, when considered as a whole, supports the finding that Petitioner retained the physical capacity to perform a range of work requiring little interaction with others at the light exertional level, and the ALJ convincingly explained what evidence supported her finding that Petitioner retained the RFC to do so. The Court concludes that, when read in full and in context, the treatment notes and Petitioner's course of treatment for his hip pain and mental impairments support the ALJ's RFC findings.

## 2.    Medical Opinions

Petitioner contends the ALJ failed to properly evaluate the medical opinions of Dr. Aoki, Petitioner's treating orthopedist and of Dr. Sather, who conducted a consultative psychological examination. First, Petitioner contends the ALJ failed to discuss Dr. Aoki's "report," which was error because, as a treating physician, the ALJ must provide "clear and convincing" reasons supported by substantial evidence for rejecting Dr. Aoki's opinions. Second, Petitioner contends the ALJ did not adequately explain the reasons for rejecting Dr. Sather's opinion that Petitioner's ability to perform work related mental activities was "seriously impaired," arguing that Dr. Sather's opinion supported a determination of disability.[6]

---

[6] Petitioner did not specifically challenge the ALJ's findings with regard to any other medical opinions contained in the record. A failure to raise a specific challenge in the opening brief results in waiver. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006).

### A.     Legal Standard

The Commissioner recently revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The revised regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations currently provide that the Commissioner "will not defer or give any specific evidentiary weight...to any medical opinion(s)...including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or his medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ need only address the remining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and

capricious.'"). Accordingly, the Court applies the revised regulations here, and rejects

Petitioner's arguments to the extent they are premised upon an outdated standard of

review.[7]

Under the revised regulations, the ALJ is required to "articulate…how persuasive

[they] find all of the medical opinions" and "explain how [they] considered the

supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The

'more relevant the objective medical evidence and supporting explanations presented'

and the 'more consistent' with evidence from other sources, the more persuasive a

medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8

(C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar.

3, 2021)). "In sum, the Commissioner must explain his reasoning and specifically address

how he considered the supportability and consistency of the opinion, and his reasoning

must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L.

S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With

these regulations and considerations in mind, the Court proceeds to its analysis.

### B.    Dr. Aoki

Petitioner argues the ALJ erroneously dismissed Dr. Aoki's report of Petitioner's

---

[7] Under the prior regulations, a treating physician's opinion was entitled to greater weight than the opinion of a consulting physician, whose opinion in turn was entitled to more weight than that of a nonexamining physician. *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion was not contradicted by another doctor, it could be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion was contradicted by another doctor, the Commissioner could not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

pain as set forth in Dr. Aoki's treatment records. Respondent contends Dr. Aoki did not provide a formal report assessing Petitioner's physical residual capacity, and that the statements contained in Dr. Aoki's treatment notes do not constitute medical opinions requiring discussion under the new regulations. The Court agrees.

Petitioner refers to Dr. Aoki's treatment notes from April of 2019 and April of 2020. Pet. Mot. at 14 – 15. (Dkt. 23.) The first treatment note, dated April 3, 2019, records that Petitioner "continues to experience bilateral hip pain, right slightly greater than left. His pain is primarily along the groin and inguinal line, and is noticeable throughout the day at rest and with prolonged walking and sitting." (AR 1617.) Petitioner self-reported his pain on a ten point scale as a six at rest, and an eight when experiencing more pain. (AR 1617.) Dr. Aoki reviewed the results of a recent pelvic MRI, which revealed a mass in Petitioner's inguinal ligament on the right side. (AR 1619.) Petitioner reported that his pain had been bothersome "right in the midline groin," and banded around the side of his hip. (AR 1619.) Dr. Aoki's plan was to refer him to a urologist to have the mass evaluated. (AR 1619.) It is not clear whether Petitioner followed through with Dr. Aoki's plan.

The second treatment note is dated April 1, 2020, from a telehealth follow up visit. (AR 1605 – 1607.) The reason for the visit was noted as "bilateral hip pain." Dr. Aoki reported that, "[o]verall he is doing really well…the weight loss has done a lot to help his hips. For now he feels good with where his hips are…I do think we give the gastric sleeve a little bit more time as well as life modifications to see if we can get more weight off as I think this will continue to make him better." (AR 1607.)

**MEMORANDUM DECISION AND ORDER - 14**

A review of the treatment notes indicates that the statements concerning

Petitioner's pain were made by Petitioner *to* Dr. Aoki, as part of Dr. Aoki's evaluation.

Dr. Aoki neither made an assessment concerning Petitioner's pain, nor did he assign any

functional limitations attributable to Petitioner's pain. Rather, Dr. Aoki recommended

further evaluation by a urologist of the mass revealed on objective imaging, implying that

the mass could be the source of Petitioner's pain complaints rather than any residual pain

from his hip surgery. The later treatment note indicates Petitioner reported doing well

following significant weight loss, and Dr. Aoki did not record any significant pain

complaints during the telehealth visit. The Court therefore finds no error in the ALJ's

failure to assess functional limitations that were not suggested by Dr. Aoki.

Additionally, the ALJ accounted for Petitioner's subjective pain complaints, as

discussed above. For example, Petitioner testified he experienced pain when bending

over or climbing stairs. Pet. Mot. at 15. (Dkt. 23, citing AR 50.) The ALJ assigned

functional limitations correlated to these pain complaints, including in the RFC the

following limitations: "no ladders, ropes, and scaffolds; occasional kneeling, crouching,

crawling, and stairs;…avoid concentrated exposure to vibrations…; and a sit-stand option

that allows for a change in position every 30 minutes…." (AR 15.) The Court finds

substantial evidence in the record to support the ALJ's RFC limitations, and finds no

error.

### C.    Dr. Sather

Petitioner argues the ALJ improperly substituted her own opinion concerning

Petitioner's mental health limitations for those of Dr. Sather. Petitioner contends the

ALJ's findings contradict the opinions expressed in Dr. Sather's evaluation, and that the record does not support "moderate" limitations in mental functioning. Petitioner further asserts that the ALJ did not provide a proper mental residual functional analysis given Petitioner is "unable to get out of bed, or to stop from trying to kill himself." Pet. Mot. at 15. (Dkt. 23.) Respondent argues the ALJ correctly evaluated Dr. Sather's opinions under the current regulations, and devised an RFC finding that adequately accounted for Petitioner's "seriously impaired" mental functioning. Resp. Brief at 10. (Dkt. 24.) The Court finds the ALJ's evaluation of Dr. Sather's opinion correctly applied the regulations, and that the RFC finding is supported by substantial evidence in the record as a whole.

On September 6, 2018, Nels Sather, Ph.D., conducted a mental status examination and psychological evaluation of Petitioner upon referral from the Social Security Administration. (AR 1340.) Dr. Sather set forth a complete account of Petitioner's psychiatric, medical, and social history as relayed by Petitioner. (AR 1340 – 1341.) Dr. Sather next conducted a mental status examination consisting of a series of objective tests and questions, as well as stated his professional assessment of Petitioner's appearance, behavior, affect, speech, thought process, and ability to relate. (AR 1342 – 1343.) Dr. Sather then provided a diagnosis and prognosis, concluding that "Mr. Worrell's ability to perform work related mental activities such as understanding, remembering, sustaining concentration, persisting with tasks, interacting socially, and adapting to workplace change is seriously impaired." (AR 1345.)

The ALJ found Dr. Sather's concluding opinion persuasive, because it was supported with objective findings from his examination, and it was consistent with

objective evidence from other sources. (AR 20.) For example, the ALJ provided a reference to an incident documented in Petitioner's medical records where Petitioner stormed out of the emergency department without provocation, which demonstrated Petitioner's inability to relate or adapt. (AR 20.) However, the ALJ noted Dr. Sather primarily relied upon Petitioner's subjective complaints to assess Petitioner's current functioning, and therefore the ALJ relied upon the findings of the agency reviewing physicians who assessed limitations in the four areas of mental functioning.[8] (AR 19, 20.) The ALJ noted that the prior administrative findings stated that Petitioner retained the capacity for simple instructions, unskilled activities, limited social interaction, and routine low stress activities. (AR 19.) The ALJ then linked these findings to references in the record available at the time, along with objective evidence from other sources in the record, to arrive at her conclusion regarding the effect of Petitioner's mental impairments on his ability to perform work related activities. (AR 20.)

The Court's independent review of the record reveals substantial evidence to support the ALJ's conclusions. For instance, the record reflects that Petitioner's treating provider recognized Petitioner's limitations with regard to maintaining relationships

---

[8] These four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. The ALJ discussed all four factors in her evaluation at step three concerning whether Petitioner has an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 13 – 14.) The ALJ concluded the record supported a finding of "moderate" limitations in each of the four functional areas. The ALJ further clarified that the limitations identified as part of her step three evaluation "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (AR 15.) The Court notes Petitioner did not challenge the ALJ's step two or three findings.

outside of his family, but that Petitioner should experience a reduction in suicidal ideation and other symptoms through medication and individual therapy once per week. (AR 1405, 1410.) The record reflects also that Petitioner reported improvement in his mental health symptoms with medication. (AR 1425.) Other records reflect that Petitioner reported sleeping and eating well, that he found support through group therapy, and that he was doing well on medication. (AR 1584.) However, the record reflected also that, if Petitioner did not take his medications, he experienced an increase in aggression and anger. (AR 1595.)

The Court finds such evidence directly correlates to the ALJ's RFC assessment limiting Petitioner to simple routine tasks, occasional and brief interaction with others, low stress work, and no fast-paced production work. (AR 15.) In other words, the ALJ discussed the impact of Petitioner's medically determinable impairments in a meaningful way when evaluating RFC. The Court finds the ALJ properly applied the regulations applicable to the evaluation of medical opinions in her scrutiny of Dr. Sather's opinions by providing a reasoned analysis with reference to specific instances in the medical records. (AR 15.)

The Court therefore finds that the ALJ's decision is supported by substantial evidence. The ALJ properly evaluated Dr. Sather's findings, diagnoses, and objective results, and provided legally adequate reasons for finding the state agency physicians' opinions regarding the effect of Petitioner's mental limitations on his ability to perform job related tasks persuasive in light of the record as a whole.

4.      **Residual Functional Capacity**

The ALJ determined that Petitioner had the RFC to perform light work with some postural limitations, and the ALJ assigned limitations correlating to Petitioner's mental health impairments. The ALJ sought testimony from an impartial vocational expert who opined that an individual with such an RFC could perform the requirements of representative occupations such as Office Work and Electronics Worker. (AR 22.) Petitioner challenges that the ALJ's step five finding on the grounds that: (1) the ALJ did not provide a significant range of occupations, because two occupations does not constitute a significant range of work under *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020); (2) the ALJ did not adequately account for Petitioner's mental limitations; and (3) the ALJ substituted his opinion for that of Dr. Sather. The Court finds the ALJ's analysis is supported by substantial evidence, as further explained below.

The United States Court of Appeals for the Ninth Circuit in *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020), held that the identification of two occupations is insufficient to satisfy the "significant range of work" requirement of the Medical-Vocational Guidelines applicable to persons of advanced age. Petitioner's reliance upon *Maxwell* is therefore misplaced here. *Maxwell* interpreted a rule that applies only to "individuals of advanced age," defined as individuals who are fifty-five years of age or older. *See* 20 C.F.R. § pt. 404, Subpt. P, App.2, Rule 202.00(c). Thus, *Maxwell* does not apply to Petitioner, who was thirty years of age on the alleged disability onset date of March 17, 2017. *Segobia v. Kijakazi*, 2021 WL 4317349 at *2 n.1 (9th Cir. Sept. 23, 2021); *Kasey v. Comm'r of Soc. Sec.*, No. C20-6153-RAJ, 2022 WL 102048 at * 4 - 5 (W.D. Wash. Jan. 11, 2022).

Petitioner's challenge to the ALJ's RFC limitations accounting for Petitioner's mental health symptoms also fails. The ALJ translated Petitioner's mental health symptoms to functional restrictions, such as simple routine tasks, occasional public and supervisor interaction that would be brief and superficial, and low stress work. (AR 15.) This is not, as Petitioner contends, insufficient to accommodate Petitioner's functional difficulties related to his mental health impairments. As previously discussed, the ALJ found Dr. Sather's opinion persuasive, but she noted that his opinion did not contain specific functional recommendations. (AR 19.) The ALJ therefore relied upon the state agency medical reviewers who analyzed the medical evidence of record to fashion restrictions correlating to Petitioner's "moderate" mental health limitations. (AR 90 – 91; 17, 19 – 20.)

The findings of the state agency medical reviewers are the only evidence in the record which translate Petitioner's mental health symptoms to explicit functional limitations. (AR 96 - 97, 19.) Petitioner does not challenge these opinions. Accordingly, the Court finds the ALJ's hypothetical to the vocational expert, and the resulting RFC, adequately captures Petitioner's deficiencies in memory; interacting with others; concentrating, persisting or maintain pace; and adapting or managing oneself, and finds the RFC limitations are supported by substantial evidence in the record. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding hypothetical limiting the petitioner to "simple, routine, repetitive work" captured deficiencies in concentration, persistence, and pace).

Last, Petitioner contends the ALJ replaced Dr. Sather's opinion with her own

opinion, reaching an independent medical conclusion unsupported by the evidence. The Court's review of the record does not support this contention, however. The ALJ is directed to review the factors enumerated in 20 C.F.R. § 404.1520c when considering medical opinions. As explained above, the ALJ considered the persuasiveness of Dr. Sather's opinion, and relied upon the findings of the state agency medical reviewers for translating Petitioner's established mental health difficulties into functional limitations expressed in the RFC determination. (AR 19 – 20.) Further, the ALJ addressed Petitioner's statements to Dr. Sather that his argumentative nature interferes with his ability to work in her finding that Petitioner should be limited to occasional public, coworker, and supervisor interaction that would be brief and superficial. (AR 20.) And, she addressed Dr. Sather's findings regarding Petitioner's impaired memory and below average ability to perform basic calculations by limiting him to simple, routine tasks and low stress work. (AR 19, 20.) [9]

The RFC determination clearly reflects the influence of Dr. Sather's objective findings and his opinion that Petitioner's ability to perform work related mental activities is "seriously impaired." (AR 20.) Petitioner does not explain his contention that the ALJ failed to account for his mental impairments, because he does not detail any precise

---

[9] Petitioner's conclusory assertion that the ALJ should have recontacted Dr. Sather if she was unable to make an independent determination is not supported by the record. Pet. Mot. at 25. (Dkt. 23.) An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Petitioner does not explain why the record was ambiguous or insufficient to permit the ALJ to make a determination. Here, the ALJ, with support in the record, found the evidence sufficient to make a determination regarding Petitioner's disability and therefore the Court finds she did not have a duty to recontact Dr. Sather.

limitations that follow from the evidence of his mental health symptoms. Accordingly, the Court rejects Petitioner's invitation to find that the ALJ failed to account for Petitioner's mental health symptoms in some unspecified way. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009).

The Court therefore finds the ALJ properly evaluated the medical opinion evidence and Petitioner's testimony. Accordingly, the ALJ's reliance on the vocational expert's opinion that an individual with the aforementioned residual functional capacity could perform the work of office worker and electronics worker was not in error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is supported by substantial evidence and reflects application of the correct legal standards. The decision will be affirmed.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2)      The Petition for Review (Dkt. 1) is **DISMISSED.**

DATED: March 29, 2022

Candy W. Dale
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**